First case for argument is McKay v. Ingleson. Counsel? Counsel to the appellant? Good morning. I'm Terry Slominski representing the appellant Ellie McKay in this matter. This is probably a relatively simple issue. The issue before the court is whether a Vanderbilt debt I claimed in the bankruptcy proceedings, the bankruptcy court here in Oregon, was exempt from discharge under 11 U.S.C. 523 A. 8. And the bankruptcy judge and the district court basically found that it was a loan. However, the issue of whether it's a student loan depends upon the definition of it. And most of the courts who've dealt with this issue go back to the Second Circuit in the In re. Renshaw case. Also the Third Circuit following Renshaw in Meta and In re. Chambers in the Seventh Circuit. How does Renshaw help you? I thought that in Renshaw one of the distinctions they drew was that there was no agreement between the parties. And once they failed to pay, the student failed to pay tuition, the university had the option of simply tossing the student out. And here it seems to me that you do have an agreement. You have some kind of a written agreement. Actually, I disagree with that, Your Honor. And just to bolster my argument, last night, yesterday afternoon, for some reason, doing some research, I found a recent case that just came down this year. And it was particularly interesting. It involves Vanderbilt. And it came out of the Central District of Illinois. And it was decided on March 27th. It's called In re. Gamble. And it's an abstract case number 07-8120, decided by Judge Thomas Perkins. And it's identical, using the same type of an agreement. Counsel, have you provided opposing counsel and the court the citation? Yes, I just did that. No. Well, we have a rule that we have to supply it in enough copies that Deputy Clerk will give you the form after the argument. Yes, I will do that. Yes. Please take care of that. And I just filed it last night. Fine. But in any event, they discussed this. And I would like to believe that Judge Perkins read my brief. But the reality is, is that he basically just adopted the In re. Renshaw. And what you pointed out, Judge, is correct on Renshaw. But the point that you used Renshaw is the definition of a loan, which was then elaborated by In re. Chambers. And that's – both these cases are the same. There is no statement in this contract that obligates the school. The school is not obligated to provide the services. It just says that they may charge, and it must be paid immediately. There's no deferment of payment. In fact, there are late charges if it is not paid when they're first billed on it. This is just like a revolving credit card with 18% interest. Hardly would the legislature really envision when we're going to try to encourage schools to do student loans. There is no deferment. And the definition of the student loan that's been adopted by the four circuits, which have found these as not student loans, is basically that it's a contract where one party transfers a defined quantity of money, goods, or services to another, and the other party agrees to pay for the sum or items at a later date, and that this must be agreed to contemporaneously. In this case, as in the case that I just cited, as in the case of Renshaw, also the BAP decisions in Hawkins, in that the school at any time could have denied access. They could have said you can't attend. Counsel, I'm still just a little – I'm a little puzzled as to what you think the Renshaw decision requires. What form of a contract would the – do you think Renshaw requires and is not satisfied by the student account and deferment agreement that Ms. McKay signed? An agreement to provide definite funds in the future. There is nothing – You mean it has to be limited? You mean there has to be a dollar amount that there's a cap on it or something? Well, there should be something. There is nothing in this. Well, this was specified. I mean, they did – Vanderbilt did list what it would cover, the library charges, the traffic fines, tuition, room, campus, dining. Well, there's nothing in this agreement that says that Vanderbilt's going to allow her to charge anything. This just talks about an event that it has done in the future. There's no amount of money, no line of credit, no specific amount of money. It doesn't even say that she can't attend classes. I mean, I – frankly, I don't find anything in that agreement as a promise. Well, we have – we do have this language that says, in consideration of Vanderbilt's extension of credit from month to month for the purchase of such services, student agreed to the following terms and conditions. I mean, it sounds like that's the language of contract, isn't it? Well – That's the fourth – that's the fourth paragraph. It's the therefore paragraph. I would imagine that that is – that is an open-end credit agreement, but it is not a loan. And I think what we're trying to get to is whether this is a loan under Section 523a-8, or is it a generic that people might talk about a loan or an obligation to perhaps pay money. But under – An extension of credit is not a loan? Not under this term, because there's no – this is not an extension of credit. There's no – there's – Well, it says it's an extension of credit. That's the language – that's what Vanderbilt wrote, extension of credit. Well, they use that term, but where is it – there is no extension of credit in the document, Your Honor. I mean, I don't see any extension that said they're going to extend anything, any sum of money or for any services. In fact, it says it has to be paid immediately. There's no deferment of payment. In fact, there's late fees if it is not paid when it's first billed. It's not a – I mean, basically, they're saying that you can – There's also wording in here specifically about deferring payment in the title of the document and in the third whereas clause, whereas the student and the guarantors desire the convenience of deferring payment. They desire that, sure, but there's no agreement that says that they're going to be able to defer payment. It says it will be due – billed monthly, and if it's not paid monthly – Well, paragraph 4 says all amounts deferred are due not later than November 30th for fall semester, April 30th for the spring semester. Paragraph 4 looks like it is a deferred payment. Well, I guess you'd say it's awfully short deferment. Well, it may be, but it does look like a deferred payment. It looks like she doesn't have to come up with the money up front. Well, again, it's a question of if it's 523A. Is this a loan or is this a credit card agreement? One could argue that this is basically just a credit card agreement without any definite terms for how much money will be advanced. And if that's the case, at least under the other circuits, and that's all I'm going to argue. I want to make sure I understand what you think is the difference between the credit card agreement and the loan. So what you think that Vanderbilt should have done here was to specify a cap on what she could – Well, first of all, they could have promised that they were going to do it. There's nothing in here, in this agreement, that says that she can charge. It is not an authorization. Sorry. There's nothing in the agreement that says what the Vanderbilt can do? Nothing in the agreement says that she can charge this. It does not authorize any kind of a charge on it. It just talks about if there are charges, that she's going to guarantee it. It doesn't state how much they will advance. They're not obligated to advance anything. If she went to charge something and they said, no, I'm sorry, we're not going to charge this and you can't attend classes and you pay, how could she claim breach of contract? There is no promise on behalf of Vanderbilt to do this. Counsel, you're down to about two minutes. Do you want to reserve?  Thank you very much. We'll hear from counsel. If it may please the Court, David Gray appearing for Defendant Appelli, Mr. Engelson, the attorney that represented Vanderbilt. Your Honor, we have the classic earmarks of a loan here. We have a writing preexisting the debt. We have an end date that is at the end of the semester. The amount is due just as it was in the Johnson case. It was a loan essentially for three months. We have an interest rate. We have attorney's fees provided. We have a note signed by the maker. And typically, we as attorneys, when we draft notes and agreements that are paid up front and performed by one party, we have it just signed by the maker of that note. We don't have it signed by the party who is giving the consideration up front. And we have the value received by the debtor. The debtor received monthly statements. She knew exactly what she was receiving in return. She promised to make payment at the end of the loan period. Counsel has argued in his brief that this might not be considered a school loan because it's not restricted to school activities. But I submit, Your Honors, that this is a school loan. In fact, the monies here are more restricted to school activities than most of our classic loans these days where the bank or lender gives money to the school, the school withholds the tuition, and then disperses the rest of the money to the student to hopefully use that money for school purposes. In this situation, we know the money was used for school purposes because it could only be used at Vanderbilt and its affiliates. The cases have discussed the ever-expanding definition of school loans. The Johnson case gives a nice history of it from the legislation of the non-dischargeability of student loans, the whole creation of this legislation up until that case. And the legislation was put together so that lenders would be inspired to lend money to students without the threat of discharge of those obligations in bankruptcy, which apparently in the 70s was a popular thing to do. That is, students would discharge their debts right after they graduated. And as time went on, the students would find a way around the non-dischargeability language, and the legislature would come back and close the loophole. It is a means to encourage lenders to make money available to students, and that's what it was used for in this purpose. Without the lender here, didn't need to fear that it would have to fight a dischargeability case, although we are here, in bankruptcy just to collect the loan. And the cases, Oldham, the case relied upon by Judge King or quoted by Judge King and Johnson, give the impression or state that you should look to the substance, what's occurring rather than the specific language and getting caught up in technicalities. Do we have a situation where somebody has loaned something of value to a party, in this case the ability to pay for tuition, with the promise that that other party will pay it back in definite repayment terms? Counsel, what is your response to Mr. Slominski's argument that there's nothing in the document which compels the university to continue to advance? In other words, certainly there's an authorization to draw, but there's no commitment to loan. Well, first of all, I think that that ignores the reality of the situation. Yeah, but we're stuck with some documents. We have to see what the documents actually provide. Well, the document is a document issued by the school, which specifically states that it is for use to charge tuition and school-related costs. All right, and Mr. Slominski says that that's all it does. It is not a commitment to continue to loan. As I said up front, usually you do not have that sort of commitment by the party that is giving the value up front. In this case, the school was giving the value, and the obligation to repay would start at the time the charges were actually made. And so you don't – it's not an executory contract. It's a performed contract at the time the charges are actually made. And I suppose that – I don't think you're responding to the point made by your opposing counsel. Now, it may very well be that it's not in the end going to be decisive, but I'd like to hear what is your direct response to the point he makes, and that is there's nothing in that document which compels the – or commits the university to loan. Well, I think it's presumed that it will loan because of the nature of the document itself. Counsel, can we tell anything by the fact that this is dated October 2nd? That usually – typically with most universities, I don't know what Vanderbilt's schedule is. That would be already into the semester. Is she already in classes as of October 2nd, 1996? No, Your Honor. From what I remember of the situation, it was that she actually signed up for this agreement a month and a half prior to the semester starting. And I believe if you take a look – The date on the account, did she not start until the winter semester? The date on her agreement is 10-2-96. Correct. I assume that's October 2nd as opposed to February 10th. I believe she signed up for this a month and a half before the semester started, so it would have been the semester following that. It would have been in January that she would have begun. I believe that's correct. With ER-10, the first charge was made on November 21st, 1996 for the term called 97S, which sounds like spring term of 1997. Getting back to the definition of loan, Your Honors, the loan definition has continued to expand, and today we have a definition, or that is as of 2005 the legislature again decided to close loopholes and has expanded the definition or made it more definite. There never was really a definition for it in the statute, but it is stated that a loan or an advance of credit that would qualify under an IRS statute, and that statute is extremely broad. It's any monies that would be loaned to a student for use for education. Anything that a student could claim on his tax returns was used for higher tuition costs would be considered a loan under the revised statute, and I would ask that the court consider that when trying to come up with a definition to apply in this particular case. There is, I believe, one case that has been discussed the new definition, and I'll provide a citation of that case to counsel in the court after our proceeding. I found it last night in preparing for argument. Mr. Sleminski, you mentioned the interest rate on this. The legislature has not limited interest rates, and as far as an interest rate making something qualify as a loan or not, there's never been any case law to suggest an interest rate affects the definition of whether something is or is not a loan, either the amount of interest rate or the absence of an interest rate. As far as the charges made, I believe they are all school-related charges, as they show on the exhibits. This court has adopted the definitions that we seek to apply here already in the Hawkins case, the Ninth Circuit case, the bankruptcy appellate panel, citing to Renshaw and citing to DePasquale, and that is you don't look necessarily to all the technicalities but what is underlying the situation. The second argument that I would like to just, well, I just have a few minutes here. You have less than one, counsel. Okay, and that is who has the obligation to go forward with this to determine whether or not there's a school loan. I mean right now the school is out of it, the school is out of our lawsuit, and we only have to consider whether or not this is a student loan for purposes of pursuing a claim against Mr. Engelson, the attorney who represented the school. And that is we believe that Ms. McKay should have gone forward with an adversary proceeding or something to have this declared to be a non-dischargeable debt before she pursued an action against the attorney in the law school. There is case law that says before you can pursue in violation such as this, it is up to the student because the non-dischargeability aspect of a student loan is to be self-executing. Again, we don't want to see. Are you making an exhaustion argument or some sort of condition precedent argument? I say are you making an exhaustion argument, in other words, that we don't have jurisdiction? I don't quite understand where you're going with this point. The point being there's case law that says before she, yes, it would be an exhaustion argument, that she should have gone forward and have this declared to be a non-dischargeable debt before she pursued an action. Okay, and if she should have, what's the bottom line, that we don't have jurisdiction? Correct. Oh, really? That you do not have jurisdiction until she determines that this is a non-dischargeable debt. At that point, then she can pursue collection for or pursue an action for. All right. Thank you. Thank you, counsel. Your time has expired. Mr. Gray, you have a little bit of reserve time, but I'd like to mention, I'm not sure that opposing counsel really answered the question that I asked him a couple of times, but I want to see what your position is here. The document says, in consideration of Vanderbilt's extension of credit from time to, from month to month, you're saying that that's not enough to establish this document as a loan within the meaning of the statute. That's correct. And I agree that it's an extension of credit. And as counsel pointed out, the legislature in 2005 changed that to include extension of credit because obviously people were concerned that some of these things were not. And all the cases I've talked about that these are, there has to be an agreement in advance of how much money is going to be loaded. And there is nothing. The day that my client signed this agreement, she could not have yelled out in the streets, whoopee, I have a loan, because it would not have been a loan, at least as defined by the other circuits. And, of course, there is no Ninth Circuit opinion directly on point on this case. Also, what counsel was just talking about was the idea that it's incumbent upon the debtor to go. I think most of the bankruptcy courts have, before they're interested in imposing any kind of sanctions, they're talking about where you have a student loan. I mean, no question, you have a whole bunch of loans out there that clearly are student loans. They have promissory notes. They smell exactly like a loan, like a car loan or anything else that you're going to get. These are student loans. In those cases, there's no automatic discharge. The debtor must bring an action to seek dischargeability. That does not apply if it is not, in fact, a student loan. If the court determines that this is not a student loan, then it is just a loan, and Mr. Ingleson is just merely a garden-variety debt collector attorney trying to collect the debt. So I think that was his point. But I'm trying to beat this over the head too many times. The extension of credit does not equate just to a loan. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee